IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02406-EWN-CBS

ROBERT E. QUINTANO,
        Applicant,
v.

WARDEN LOU ARCHULETA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO, JOHN SUTHERS,
        Respondents.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action is before the court on Mr. Quintano's "Application for a Writ of

Habeas Corpus Pursuant to 28 U.S.C. Section 2254" ("Petition") (doc. # 3).  Pursuant

to the Order of Reference dated December 8, 2006 (doc. # 6), this civil action was

referred to the Magistrate Judge to, *inter alia*, "submit to me proposed

recommendations . . . ."  The court has reviewed the Petition, Respondents' Answer

(filed January 5, 2007) (doc. # 11), Mr. Quintano's "Reply to Answer to Application for

Writ of Habeas Corpus" ("Traverse") (doc. # 27), the pertinent parts of the state court

record, the entire case file, and the applicable law, and is sufficiently advised in the

premises.


I.      Background

        Mr. Quintano is currently incarcerated at the Arkansas Valley Correctional

Facility of the Colorado Department of Corrections in Crowley, Colorado. (*See* Petition (doc. # 3) at p. 9 of 21). After a jury trial held on June 21 and June 22, 1999, Mr. Quintano was convicted of Count 2 for sexual assault on a child under fifteen years of age by one in a position of trust, in violation of Colo. Rev. Stat. § 18-3-405.3 (2000), a class 3 felony, and Count 3 for sexual assault on a child, in violation of Colo. Rev. Stat. § 18-3-405(1) (2000), a class 4 felony. (*See* Appendix A (doc. # 11-2) at pp. 5, 8-9 of 15; Appendix B (doc. # 11-3) at p. 8 of 32). On January 6, 2000, the trial court imposed a sentence of 16 years for Count 2 and 8 years for Count 3, to run concurrent to the 16-year sentence imposed for Count 2. (*See* Appendix A (doc. # 11-2) at p. 10 of 15).

Mr. Quintano appealed his conviction and sentence. (*See* Appendix A (doc. # 11-2) at p. 10 of 15). Mr. Quintano's conviction and sentence were affirmed on direct appeal by the Colorado Court of Appeals on May 17, 2001. (*See People v. Quintano* (Colo. App. No. 00CA0290, May 17, 2001) (not published pursuant to C.A.R. 35(f)) (Appendix D (doc. # 11-5))). The Colorado Supreme Court denied Mr. Quintano's petition for *writ of certiorari* on October 1, 2001 in Case No. 01SC438. (*See* Appendix A (doc. # 11-2) at p. 11 of 15; Appendix F (doc. # 11-7)). The Colorado Court of Appeals issued its mandate on October 5, 2001. (*See* Appendix A (doc. # 11-2) at p. 11 of 15; Appendix E (doc. # 11-8)).

On February 1, 2002, Mr. Quintano filed a motion for sentence reconsideration pursuant to Crim. P. 35(b). (*See* Appendix A (doc. # 11-2) at p. 11 of 15; Appendix H (doc. # 11-9) at p. 7 of 14). After a continued hearing, the motion was denied on May 29, 2002. (*See* Appendix A (doc. # 11-2) at pp. 6, 11-12 of 15). On April 9, 2002, Mr.

Quintano filed *pro se* a motion for postconviction relief pursuant to Crim. P. 35(c). (*See* Appendix A (doc. # 11-2) at p. 12 of 15; Appendix H (doc. # 11-9) at p. 7 of 14). The trial court appointed counsel for Mr. Quintano on May 29, 2002 and on October 21, 2003 counsel filed a supplement to the Crim. P. 35(c) motion. (*See id.*). After a continued hearing on March 19, 2004, the trial court denied Mr. Quintano's Crim. P. 35(c) motion. (*See* Appendix A (doc. # 11-2) at pp. 6, 12-13 of 15; Appendix H (doc. # 11-9) at p. 7 of 14).

On or about May 4, 2004, Mr. Quintano appealed the denial of his Crim. P. 35(c) motion. (*See* Appendix A (doc. # 11-2) at p. 13 of 15; Appendix H (doc. # 11-9) at p. 7 of 14). On May 19, 2005, the Colorado Court of Appeals affirmed the trial court's denial of Mr. Quintano's Crim. P. 35(c) motion. (*See People v. Quintano* (Colo. App. No. 04CA0869, May 19, 2005) (*modified and petition for rehearing denied*) (not published pursuant to C.A.R. 35(f)) (Appendix L (doc. # 11-13))). On or about February 2, 2006, Mr. Quintano filed a petition for *writ of certiorari*. (*See* Appendix M (doc. # 11-14)). The Colorado Supreme Court denied Mr. Quintano's petition for *writ of certiorari* on May 22, 2006 in Case No. 05SC893. (*See* Appendix A (doc. # 11-2) at p. 13 of 15; Appendix N (doc. # 11-15)). The Colorado Court of Appeals issued its mandate on May 26, 2006. (*See* Appendix A (doc. # 11-2) at p. 14 of 15).

Mr. Quintano filed this Petition in federal court on or about November 24, 2006. (*See* "Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 in a Habeas Corpus Action" (doc. # 1)). Mr. Quintano raises five claims, some of which include multiple subparts: (1) that he received ineffective assistance of trial

counsel; (2) that the trial court erred in denying his motion for a new trial based on evidence discovered after the trial; (3) that the trial court erred in denying his challenges for cause to two prospective jurors; (4) that the intoxicating effects of medication should have been considered as a mitigating factor regarding his failure to appear on the second day of trial; and (5) that the trial court abused its discretion in imposing the maximum presumptive range sentence. (*See* Petition (doc. # 3) at pp. 5-6, 10-21 of 21).

II.     One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).

III.    Exhaustion of State Remedies

"A threshold question that must be addressed in every habeas case is that of exhaustion." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). Before a state prisoner may raise a federal constitutional claim attacking his state conviction in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254, he or she must have first exhausted state remedies and provided the state courts with a fair opportunity to apply controlling legal principles to facts bearing on the constitutional claims. *Miranda v. Cooper*, 967 F.2d 392, 397 (10th Cir. 1992). This principle has been codified in 28 U.S.C. § 2254(b)(1).

Exhaustion requires that a habeas corpus petitioner "present the state courts

with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The exhaustion requirement is satisfied when the state courts have had "one full opportunity" to pass upon and correct alleged constitutional violations. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court. *O'Sullivan*, 526 U.S. at 845-47. It is not sufficient that the claim asserted in a federal habeas application is somewhat similar to one presented to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Additionally, in order to meet the exhaustion requirements of § 2254(b)(1), the claim advanced pursuant to federal habeas must have been submitted to the state courts as one arising under the federal constitution.

As a threshold matter, Respondents contend that Mr. Quintano has failed to exhaust his state court remedies as to Claims One, Two, Four, and Five. Respondents further contend that Mr. Quintano is now procedurally barred from bringing these claims before the state courts and that these claims should be dismissed with prejudice due to procedural default.

In Claim One, Mr. Quintano alleges ineffective assistance of trial counsel for: (1) lack of preparation at trial, including failing to interview prosecution witnesses, failing to prepare defense witnesses, not attempting to locate exculpatory witnesses, and not utilizing any expert witnesses; (2) inadequate representation at the hearing regarding Mr. Quintano's failure to appear on the second day of the trial; (3) inadequate investigation of the case, including failure to admit pages of the victim's diary, failure to

5

investigate the decision to file charges in the case, failure to attack the validity of Mr.

Quintano's prior conviction, failure to challenge child hearsay statements, failure to file

substantive pretrial motions, inadequate impeachment of trial witnesses, failure to

challenge prosecutor's statements to the jury, improper advice regarding Mr.

Quintano's right to testify, causing Mr. Quintano to "absent[ ] himself from trial on the

second day," failure to investigate the facts, failure to file a post-trial motion for

judgment of acquittal, failure to challenge the sufficiency of the evidence, and

cumulative error. (Petition (doc. # 3) at pp. 10-12 of 21). In the Colorado Court of

Appeals, Mr. Quintano raised his claim of ineffective assistance of trial counsel based

only on counsel's alleged lack of contact with him prior to and during trial, counsel's

inadequate explanation to Mr. Quintano of his right to testify, and inadequate

representation at the hearing regarding Mr. Quintano's failure to appear on the second

day of trial. (*See* Appendix H (doc. # 11-9) at pp. 9-12 of 14). Mr. Quintano did not

seek review of his ineffective assistance claim in the Colorado Supreme Court. (*See*

Appendix M (doc. # 11-14) at p. 6 of 11 ("The court applied Rule 43(b)(10) [sic] Crim. P.

but did not make a finding that the Defendant's failure to return was voluntary, knowing

and intelligent. The Court of Appeals declined to apply the plain error standard . . . .

Additionally, there was proffered new evidence which should have been considered. . .

.")). Exhaustion requires that a claim must be presented not only to the trial court but

also to the state's intermediate court as well as to its supreme court. *O'Sullivan*, 526

U.S. at 845-47. Mr. Quintano did not exhaust his state remedies as to his claim of

6

ineffective assistance.[1]

In Claim Two, Mr. Quintano alleges that the trial court erred in denying his motion for a new trial based on evidence discovered after the trial. (*See* Petition (doc. # 3) at pp. 6, 13-14 of 21). In Claim Five, Mr. Quintano alleges that the trial court abused its discretion in imposing the maximum presumptive range sentence. (*See* Petition (doc. # 3) at pp. 20-21 of 21). Respondents argue that these claims are not exhausted because Mr. Quintano presented these claims in the state courts only under state law.

A petitioner "may fairly apprise the state court of a federal constitutional claim by relying on federal and state cases that employ a constitutional analysis, asserting the claim in terms that call to mind a specific right protected by the Constitution, or alleging facts that fall well within the mainstream of constitutional litigation." *Velez v. People of the State of New York*, 941 F. Supp. 300, 309 (E.D.N.Y. 1996) (internal quotation marks and citation omitted). *See also Laurore v. Spencer*, 267 F. Supp. 2d 131, 135 (D. Mass. 2003) (a court may be alerted to a federal constitutional claim by "trappings - specific constitutional language, constitutional citation, appropriate federal precedent,

---

[1]    Mr. Quintano has not raised Colorado Supreme Court Rule 51.1 as an argument against exhaustion in the state supreme court. Even if he had, the argument fails because Rule 51.1 was not in effect at the time Mr. Quintano's claims were pending in the state courts. Therefore, exhaustion at the state supreme court level was a remedy "available" to the petitioner for purposes of 28 U.S.C. § 2254(b)(1). *See Wenger v. Frank*, 266 F.3d 218, 224-26 (3d Cir. 2001) (holding that similar rule issued by Pennsylvania Supreme Court did "not apply in cases in which the time to petition for review by the state supreme court expired prior to the date of the" rule).

substantive constitutional analogy, . . . such as would in all likelihood alert a reasonable jurist to the existence of the federal question") (internal quotation marks and citation omitted); *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) ("The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined") (internal quotation marks and citation omitted). *Cf. Baker v. Horn*, 383 F. Supp. 2d 720, 749 ((E.D. Pa. 2005) (appellate brief that set forth factual basis of each claim, specifically identified federal constitutional provision or guarantee violated, or cited federal cases addressing alleged constitutional violation, "fairly presented" to the state courts each claim in the petition).

As to Claims Two and Five, in his state court briefs Mr. Quintano cited no federal or constitutional law or grounds. (*See* Appendix B (doc. # 11-3) at pp. 28-31 of 32; Appendix H (doc. # 11-9) at pp. 12-14 of 14; Appendix J (doc. # 11-11) at p. 3 of 4). Mr. Quintano did not allege in the state courts that any of his fundamental constitutional rights were violated. (*See id.*). Mr. Quintano's arguments in the state courts regarding Claims Two and Five relied solely on Colorado statutes and Colorado caselaw. The Appellee did not recognize or treat Mr. Quintano's claims as raising any federal constitutional issues. (*See* Appendix C (doc. # 11-4) at pp. 10-14 of 14; Appendix I (doc. # 11-10) at pp. 8-10 of 11). The Colorado Court of Appeals reviewed Mr. Quintano's claims as issues of state law only. (*See People v. Quintano* (Colo. App. No. 00CA0290, May 17, 2001) (Appendix D (doc. # 11-5) at pp. 7-9 of 9)); *People v. Quintano* (Colo. App. No. 04CA0869, May 19, 2005) (Appendix L (doc. # 11-13))).

Because Mr. Quintano did not present the substance of his Claims Two and Five

in a manner sufficient to put the state courts on notice that he was "complaining about a violation of *federal* law," he has failed to exhaust his state remedies as to those Claims. *Baldwin v. Reese*, 541 U.S. 27, 30 (2004) (emphasis in original). Mr. Quintano's Claims Two and Five are properly dismissed for failure to exhaust state court remedies.

In Claim Four, Mr. Quintano alleges that the intoxicating effects of medication should have been considered as a mitigating factor regarding his failure to appear on the second day of trial. (*See* Petition (doc. # 3) at pp. 6,18-19 of 21). Mr. Quintano did not raise this claim in the Colorado Court of Appeals or the Colorado Supreme Court, either on direct appeal or on appeal of his Crim P. 35(c) motion. (*See* Appendix B (doc. # 11-3); Appendix E (doc. # 11-6); Appendix H (doc. # 11-9); Appendix J (doc. # 11-11); Appendix K (doc. # 11-12); Appendix M (doc. # 11-14)). Because Mr. Quintano did not present this claim to the state courts, he has not exhausted his state remedies as to this claim.

IV.    Procedural Default

"Generally, when a habeas petitioner has failed to exhaust state court remedies, a federal court should dismiss the petition without prejudice so that those remedies may be pursued." *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997). However, "if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th

Cir. 1992) (citation omitted).  *See also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims may be barred).

A state procedural rule is independent if it relies on state law, rather than federal law, as the basis for the decision.  *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir.1998).  To be adequate, "a state's procedural rule used to bar consideration of a claim must have been firmly established and regularly followed by the time as of which it is to be applied."  *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1344 (10th Cir. 1999) (citations and internal quotation marks omitted).  *See also Hickman v. Spears*, 160 F.3d 1269, 1270 (10th Cir. 1998) (state procedural rule is adequate if the state strictly or regularly follows it and applies the rule evenhandedly to all similar claims).

Procedural default is a matter of state law.  Mr. Quintano can no longer raise his unexhausted claims in the state courts on direct appeal.  *See* C.A.R. 4(b) ("in a criminal case the notice of appeal by a Defendant shall be filed in the appellate court . . within forty-five days after the entry of the judgment or order appealed from"); C.A.R. 52(b) ("any petition for writ of certiorari to review a judgment of the Court of Appeals shall be filed in the Supreme Court within thirty days . . ."). Once the time for direct appeal has expired, the appropriate method of attacking a criminal conviction is through a motion pursuant to Colo. R. Crim. P. 35(c).

A post-conviction proceeding is "supplementary to the direct appeal." *People v.*

*Valdez*, 911 P.2d 703, 704 ((Colo. App. 1996). The remedy provided by Rule 35 is not a substitute for direct appeal. *People v. Shearer*, 508 P.2d 1249, 1253 (Colo. 1973). Mr. Quintano "is prohibited from using a proceeding under Crim. P. 35 to relitigate issues fully and finally resolved in an earlier appeal." *DePineda v. Price*, 915 P.2d 1278, 1281 (Colo. 1996). Further, Crim. P. 35(c)(3)(VI) expressly bars relief on claims that were "raised and resolved in a prior . . . postconviction proceeding on behalf of the same defendant."

The unexhausted issues alleged in the Petition concern facts that had taken place or were within Mr. Quintano's knowledge prior to his direct appeal. Post-conviction review of Mr. Quintano's unexhausted claims would be "nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory." *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (internal quotation marks and citation omitted) (quoting *People v. Bastardo*, 646 P.2d 382, 383 (1982) ("post-conviction relief was not warranted because the issues raised were available for review when the case was reviewed on appeal.")). The court also need not entertain a second motion or successive motions for postconviction relief based upon the same or similar allegations on behalf of the same prisoner. These prohibitions on raising claims in a post-conviction petition that could have been brought on direct appeal or are based on upon the same or similar allegations in a previous post-conviction petition are adequate and independent state procedural bars to federal habeas review. Mr. Quintano's Claims One, Two, Four, and Five are procedurally barred from consideration by this court.

V.    Exceptions to Procedural Default

The court must next determine whether an exception applies which would overcome the procedural bar and allow Mr. Quintano's defaulted claims to be reviewed by this court.  Claims which have been procedurally defaulted must be dismissed with prejudice unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or alternatively, that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.

The determination of cause and prejudice and of a fundamental miscarriage of justice are both matters of federal law.  *See Murray v. Carrier*, 477 U.S. 478, 489, 106 S. Ct. 2639 (1986).  In order to meet the "cause" element of the cause and prejudice standard, a petitioner must demonstrate that his failure to properly raise his federal constitutional claims in state court was the result of some objective factor external to the defense.  *Carrier*, 477 U.S. at 488;  *see also Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) ("Examples of such objective factors include a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.") (quoting *Carrier*, 477 U.S. at 488) (internal quotation marks omitted).  "As for prejudice, a petitioner must show actual prejudice resulting from the errors of which he complains."  *Johnson v. Champion*, 288 F.3d 1215, 1227 (10th Cir. 2002) (internal quotation marks and citation omitted).

"As an alternative to showing cause and prejudice, a procedurally defaulted

petitioner can obtain federal review of his claims if he or she can demonstrate that failure to consider them will result in a fundamental miscarriage of justice." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1372 (10th Cir. 1997) (citation omitted). The fundamental miscarriage of justice exception is an "extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir.1993) (quoting *Murray*, 477 U.S. at 496)).

Mr. Quintano asserts "cause for default, actual prejudice and a fundamental miscarriage of justice." (*See* Traverse (doc. # 27)).


1.      Cause and Prejudice

Mr. Quintano asserts cause and actual prejudice for his failure to properly raise his defaulted claims in state court.

Mr. Quintano's claim of ineffective assistance of counsel as cause for the procedural default of certain of his claims appears to be directed at appellate, trial, and postconviction counsel. (*See, e.g.*, Traverse (doc. # 27) at pp. 3, 4, 5, 6, 14, 15 of 41 ("any lack of presentation of these claims would fall to ineffective assistance of counsel to fully present them for rulings . . . If it was not argued, it was [appellate counsel's] failure to argue it . . . so was prejudiced by ineffective assistance . . . Defense counsel was ineffective for not recognizing it . . . this amounted to ineffective assistance . . . .").

It is well established that in certain circumstances, appellate counsel's

ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. *See Carrier*, 477 U.S. at 488-89. However, the ineffective assistance of appellate counsel claim must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Carrier*, 477 U.S. at 489. That is, an ineffective assistance of counsel claim asserted as "cause" for the procedural default of another claim can itself be procedurally defaulted and cannot serve as "cause" to excuse the procedural default unless the prisoner can satisfy the "cause and prejudice" standard with respect to that claim. *Edwards*, 529 U.S. at 451-52. *See also Hume v. McKune*, 176 F. Supp. 2d 1134, 1142 (D. Kan. 2001) ("before 'ineffective assistance of counsel' may be advanced as cause for the procedural default of another claim, counsel's ineffectiveness must have been presented to the state courts in accordance with state law").

To the extent that Mr. Quintano argues ineffective assistance of appellate counsel as "cause" for his failure to properly raise his federal constitutional claims in state court, there is no indication in the record and Mr. Quintano does not indicate that he raised his claim of ineffective assistance of appellate counsel in the state courts. Thus, Mr. Quintano has procedurally defaulted his ineffective assistance of appellate counsel claim and it cannot serve as cause for the procedural default of his Claims One, Two, Four, and Five.

Mr. Quintano also argues ineffective assistance of his trial counsel based on "lack of presentation by Defense Counsel" (*see* doc. # 27 at p. 2 of 41) as "cause" for

the procedural default of several of his claims. Constitutionally ineffective trial counsel can provide cause to excuse a procedural default. *Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir. 1999) (internal quotation marks and citation omitted). However, "before an ineffective assistance of counsel claim may be raised as cause in a federal habeas, it must first be exhausted in state court *and* not be procedurally defaulted." *Justus v. Murray*, 897 F.2d 709, 714 (4th Cir. 1990) (emphasis in original). A procedurally defaulted ineffective assistance of counsel claim may not be offered as cause to excuse an earlier procedural default. *Id.*

In the Colorado Court of Appeals, Mr. Quintano did not raise his claim of ineffective assistance of trial counsel based on "lack of presentation." (*See* Appendix H (doc. # 11-9) at pp. 9-12 of 14). Nor did Mr. Quintano seek review of his ineffective assistance claim in the Colorado Supreme Court. (*See* Appendix M (doc. # 11-14). Mr. Quintano's claim of ineffective assistance of trial counsel was not exhausted in state court and is procedurally defaulted. As Mr. Quintano's claim of ineffective assistance of trial counsel based on "lack of presentation" is itself procedurally defaulted, it cannot serve as a justification to excuse Mr. Quintano's procedural default with respect to Claims One, Two, Four, and Five. Further, trial counsel's errors would not explain appellate counsel's failure to raise claims on direct appeal or explain postconviction counsel's failure to raise claims under Crim. P. 35 or on appeal.

As cause for procedural default, Mr. Quintano further argues that postconviction counsel was ineffective. (*See* Traverse (doc. # 27) at p. 4 of 41). Mr. Quintano's assertion of this cause for his procedural default fails because he was not entitled to

15

assistance of counsel in his postconviction proceeding. *Parkhurst*, 128 F.3d at 1371 (citation omitted). To the extent that Mr. Quintano argues ineffective assistance of postconviction counsel as "cause" for his failure to properly raise his claims in state court, any failure to adequately assist Mr. Quintano "in this regard would therefore not amount to a violation of constitutional magnitude and, as such, cannot provide the cause necessary to excuse [Mr. Quintano] procedural default." *Parkhurst*, 128 F.3d at 1371. *See also Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (assertion "that the attorney who represented him in his state post-conviction proceedings was ineffective . . . is insufficient to establish cause and prejudice because a criminal defendant is not constitutionally entitled to representation by counsel in state post-conviction proceedings.").

Once a petitioner has established cause, he must show "actual prejudice" resulting from the errors of which he complains. As Mr. Quintano has failed to demonstrate cause for his procedural default of Claims One, Two, Four, and Five, the court need not address whether he also suffered actual prejudice.


2.      Fundamental Miscarriage of Justice

Mr. Quintano further asserts that the application of a procedural bar against his defaulted claims will result in a fundamental miscarriage of justice. (*See, e.g.*, Traverse (doc. # 27) at pp. 5, 7, 15 of 41). Mr. Quintano asserts his "Actual and Factual Innocence." (*See* Traverse (doc. # 27) at pp. 2-15 of 41).

Mr. Quintano's claim of innocence is not itself a constitutional claim that provides

a basis for habeas relief, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). "The fundamental miscarriage of justice exception is available only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence." *Herrera*, 506 U.S. at 404 (internal quotation marks and citation omitted). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400. *See also Barefoot v. Estelle*, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials.")*; Hyde v. Shine*, 199 U.S. 62, 84 (1905) ("[I]t is well settled that upon *habeas corpus* the court will not weigh the evidence.") (italics in original).

The "actual innocence" standard is a high one, and is not satisfied merely by evidence that might have raised reasonable doubts in the trial jurors' minds; rather, Mr. Quintano must come forward with new evidence and show, by a preponderance of the evidence, that "no reasonable juror would have convicted him in the light of the new evidence." *Sellers v. Ward*, 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "Actual innocence" claims must be supported by "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. "To prevail, [Mr. Quintano] must identify evidence that affirmatively demonstrates his innocence." *Phillips*, 182 F.3d at 774 (citation omitted).

Mr. Quintano's assertion of "Factual and Actual Innocence" falls "considerably

short of the 'extraordinarily high' showing of actual innocence that would be required."
*Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994). The "evidence" Mr. Quintano
offers as grounds that he was innocent of the crimes consists of his arguments that
"the original page from Ms. McKenna's Diary" should be reexamined, that all of the
diary should have been admitted, and that his trial counsel provided ineffective
assistance. (*See* Traverse (doc. # 27) at pp. 7-15 of 41).

Evidence which merely corroborates, impeaches, or raises "some suspicion or
doubt" about guilt is insufficient to satisfy the "actual innocence" standard. *Stafford*, 34
F.3d at 1561. Mr. Quintano's proffered "evidence" is nothing more than corroboration
or impeachment of other evidence received by the trial court, or speculation as to what
evidence might have been produced. Mr. Quintano has presented no new evidence
attesting to his actual innocence; rather, he argues that evidentiary errors committed by
the trial court and ineffective assistance of his trial counsel prevented the jury from
recognizing his innocence. Mr. Quintano does not support his arguments with new
evidence attesting to his actual innocence. *See Schlup*, 513 U.S. at 316 ("Without any
new evidence of innocence, even the existence of a concededly meritorious
constitutional violation is not in itself sufficient to establish a miscarriage of justice that
would allow a habeas court to reach the merits of a barred claim."). Mr. Quintano has
not demonstrated a fundamental miscarriage of justice sufficient to overcome his
procedural default. Mr. Quintano's procedurally defaulted Claims One, Two, Four, and
Five are properly dismissed with prejudice.

The court proceeds to examine the merits of Claim Three, Mr. Quintano's single

remaining non-defaulted claim.

VI.    Merits of Mr. Quintano's Claim Three

     1.    Standard of Review

Mr. Quintano filed this habeas proceeding after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d) and (e), as amended by the AEDPA. *Williams v. Taylor*, 529 U.S. 362, 402 (2000). *See also Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)").

Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640. In determining whether the state court decision "involved an unreasonable application of clearly established Federal law,"

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Quintano] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). *See also Fields v. Gibson*, 277 F.3d 1203, 1215-16 (10th Cir. 2002) (If the court treats the issue as a factual determination under § 2254(d)(2) and (e)(1), it must ask whether the petitioner has "rebutted the presumption of correctness by showing, by clear and convincing evidence, that the state court's decision was an unreasonable determination of the facts.").

2.     Analysis

Mr. Quintano alleges in Claim Three that the trial court erred in denying his challenges for cause to two prospective jurors, Ms. Coberly and Ms. Webb. (*See* Petition (doc. # 3) at pp. 15-17 of 21). Mr. Quintano exercised a peremptory challenge to remove juror Coberly. (*See* Appendix B (doc. # 11-3) at p. 14 of 32). She "was thereby removed from the jury as effectively as if the trial court had excused [her] for cause." *Ross v. Oklahoma*, 487 U.S. 81, 85-86 (1988). *See also Salladhin v. Gibson*,

20

275 F.3d 1211, 1224 (10th Cir. 2002) (Even if the trial court should have removed a prospective juror for cause, any constitutional error was cured when defendant used a peremptory challenge to remove the juror). Mr. Quintano did not exercise a peremptory challenge to juror Webb and she served on the jury. (*See* Appendix B (doc. # 11-3) at p. 14 of 32). Thus, Mr. Quintano's claim "must focus not on [juror Coberly], but on [juror Webb] who ultimately sat." *Ross*, 487 U.S. at 85-86.

Mr. Quintano presented the circumstances to the Colorado Court of Appeals as follows.

### B. Juror Webb revealed her partiality on her questionnaire and in voir dire.

Ms. Webb stated on question twenty on her jury questionnaire in answer to the question "Is there any reason you believe you could not be a fair juror in a criminal case?" as follows:

[I]f it is child molestation, I believe in Death only!

On the follow-up question, number twenty-five Ms. Webb did not answer "Yes" or "No" to the inquiry as to whether anything about the allegation would prevent her from being a fair juror. Instead, she answered as follows:

I do not know! If I believe there is guilt at the end of the trial, Death is the only option.

In the questions that followed, Ms. Webb revealed that both she and her sister had been the victim of sexual assault. She wrote that she was unsure if she and her sister's molestation would prevent her from being a fair juror in this case. In answer to the last question, which asked if she had any other information she should be asked about, she answered:

[A]sk me. I'll be honest on my feelings. I have 3 daughters whom I would protect with a vengence [sic].
. . .

The court then questioned Ms. Webb further about the sexual assault on she and her sister.  The colloquy was as follows:

> THE COURT:　　　Okay.  Do you mind if I ask you a few more questions about the incident you described, you refer to involving yourself?
>
> THE JUROR:　　　Uh-huh.
>
> THE COURT:　　　Did this occur when you were a child?
>
> THE JUROR:　　　Yes, I was probably eleven years old.
>
> THE COURT:　　　Okay.  And was the perpetrator a relative?
>
> THE JUROR:　　　Yes.
>
> THE COURT:　　　Okay.  Were there any criminal charges filed?
>
> THE JUROR:　　　No.
>
> THE COURT:　　　And did you undergo any sort of therapy as a result of that?
>
> THE JUROR:　　　Unfortunately, no, it was one of those I'm old enough.  It was one of – during the era it was not discussed.  Nothing was ever said.  It was a dropped issue.
>
> THE COURT:　　　Okay.  How has that situation affected you, if it's affected you at all, in adulthood?
>
> THE JUROR:　　　Probably very protective of my own three daughters, very conscious of how people behave around them and I guess you would say watch people.
>
> THE COURT:　　　Has it had any other affect [sic] other than that on you?
>
> THE JUROR:　　　I think there needs to be stronger laws everywhere, but I obviously can't change those.

THE COURT: Okay. Well, let me ask you this, if you had to sit where Mr. Quintano sits charged with offenses like this, would you want someone on your jury with your frame of mind?

THE JUROR: I thought about that when you asked us earlier, and I would say yes, because I do presume him innocent until the proof is there that he's guilty.

The prosecutor questioned Ms. Webb, and part of that questioning follows:

MS BLACK: It sounds like your feelings are more strong in the sense of what sentence should be imposed if somebody is --

THE JUROR: Exactly.

MS BLACK: -- found guilty?

THE JUROR: Exactly.

MS BLACK: Would you be comfortable knowing that would be up to the Court, if a guilty verdict is found, you have to trust the judge to impose an appropriate sentence. As a juror, you [sic] decision is determining the facts, whether or not something happened or whether the prosecution can prove it beyond a reasonable doubt. Keeping in mind your role, would you be comfortable with that role in this case?

THE JUROR: Yes.

The court asked:

THE COURT: Do you feel that your prior incident would affect you at all in that role of determining, once you hear this evidence, whether or not this occurred?

THE JUROR: Yes.

MS. BLACK: Okay.

THE JUROR: I think I would be okay.

Defense counsel [ ] then questioned Ms. Webb as follows:

> MR. SADICK:    Thank you.  Good afternoon, Ms. Webb.  Ms. Webb, when you were filling out your juror questionnaire and you were asked if there was anything about these accusations that would prevent you from being a fair juror, you wrote, "I do not know."

> THE JUROR:    Right.  I mean, I don't know what you would consider to be fair or unfair.

> MR. SADICK:    Okay.  Do you have some doubts about being able to be fair and impartial because of your past experience?

> THE JUROR:    Not being impartial.  I just wonder how it's going to affect I guess you would say old feelings.

> MR. SADICK:    Okay.  Do you think that those old feelings could come up and affect your fairness in the trial?

> THE JUROR:    No.

> MR. SADICK:    You don't think so.  So when you said you didn't know if you could be fair or not, you just didn't think enough about that?

> THE JUROR:    And I know that because I have been molested that puts me in a, I guess you would say, a position of where I wouldn't be considered a fair person on a jury.

> MR. SADICK:    Okay.  And do you consider that yourself, do you feel that way yourself?

> THE JUROR:    I don't know.  I don't know.

> MR. SADICK:    Okay.  So you have some doubts about whether you could be fair and impartial, would that be fair to say?

> THE JUROR:    Towards this case, I probably could be fair because of the fact that, like I said, I don't know anything

about the case.

MR. SADICK:      Right.

MR. SADICK:      Well, you know what the charges are, right?

THE JUROR:      Right.

MR. SADICK:      And is your answer still the same, that you don't have any doubts about being fair and impartial on a case like this?

THE JUROR:      I think I could be fair.  I think I'm just unsure about how this is making me feel.

MR. SADICK:      Okay. Well, those feelings of -- about being unsure about how you're going to feel, do you think that some of those feelings could come up that might compromise your fairness or impartiality in this case?

THE JUROR:      No.

(Appendix B (doc. # 11-3) at pp. 21-25 of 32).

        The Colorado Court of Appeals found the trial court did not abuse its discretion in denying Mr. Quintano's challenge to Ms. Webb for cause.  "[T]his juror indicated that she presumed defendant was innocent, that she would keep an open mind and not prejudge any issues, that she would listen carefully to all the evidence presented and base her decision solely on that evidence, and that she was confident any feelings that might arise concerning her personal experience with this type of offense would not compromise her ability to be fair and impartial in this case."  (*See People v. Quintano* (Colo. App. No. 00CA0290, May 17, 2001) (Appendix D (doc. # 11-5) at p. 6 of 9)).  "Because the record clearly demonstrates this juror's ability to render a fair and

impartial verdict, we will not disturb the court's denial of this challenge for cause." *Id*. The Colorado Court of Appeals further rejected Mr. Quintano's contention "that this juror should have been disqualified solely on the ground that she had been sexually assaulted under similar circumstances." (*See People v. Quintano* (Colo. App. No. 00CA0290, May 17, 2001) (Appendix D (doc. # 11-5) at p. 6 of 9)).

The Sixth Amendment to the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ." U.S. Const. amend. VI. The Supreme Court has held "that an impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.' " *Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). *See also Irwin v. Dowd*, 366 U.S. 717, 723 (1961) ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.") (citations omitted).

"[W]here an adversary wishes to exclude a juror because of bias, then, it is the adversary seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality." *Witt*, 469 U.S. at 423 (citation omitted). "It is then the trial judge's duty to determine whether the challenge is proper." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (where criminal defendant sought to excuse juror for cause and trial judge refused, question was simply "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, . . .")). It is well-settled that "a juror may not be challenged for cause based on his views . . .

26

unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Witt*, 469 U.S. at 420 (capital punishment case) (internal quotation marks, citation, and emphasis omitted).

"A trial judge's determination of a potential juror's bias . . . is a factual finding entitled to a presumption of correctness." *Moore v. Gibson*, 195 F.3d 1152, 1168 (10th Cir. 1999) (citations omitted). *See also Patton*, 467 U.S. at 1036-38 (trial court's finding that the juror was able to be impartial is a finding of historical fact which a federal habeas court must presume to be correct, so long as the record provides fair support); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) ("state court factual findings are presumptively correct and may be rebutted only by clear and convincing evidence") (citing 28 U.S.C. § 2254(e)(1)) (internal quotation marks and case citation omitted), *cert. denied*, 545 U.S. 1146 (2005); *Workman v. Mullin*, 342 F.3d 1100, 1108 (10th Cir. 2003) ("[F]ederal courts may only reverse state court determinations of juror impartiality upon a showing of 'manifest error.' ") (internal quotation marks and citations omitted); *Cannon v. Gibson*, 259 F.3d 1253, 1280 (10th Cir. 2001) (deferring to a trial judge's finding as to whether a potential juror is biased unless the finding is rebutted by clear and convincing evidence). "This limited degree of review is justified by a trial judge's unique advantage in observing and evaluating the demeanor of jurors." *Workman*, 342 F.3d at 1109 (citations omitted). *See also Patton*, 467 U.S. at 1038 and n. 14 (determination of impartiality "is essentially one of credibility" and demeanor, entitled to special deference); *Castro v. Ward*, 138 F.3d 810, 824 (10th Cir. 1998) ("Because issues of credibility and demeanor are crucial to the trial judge's determination, our

review of that determination is quite deferential.")

The record supports the trial court's refusal to excuse the prospective juror for cause. The trial court conducted a thorough investigation into the attitudes and beliefs of the challenged juror. Ms. Webb stated that she would presume Mr. Quintano innocent until his guilt was proven beyond a reasonable doubt, that her past experience would not affect "her fairness in the trial," and that her feelings would not "compromise [her] fairness or impartiality." (*See* Appendix B (doc. # 11-3) at pp. 23-25 of 32). The trial court's examination of the challenged juror revealed no evidence that she was biased. Ultimately, a habeas court must only determine "whether there is fair support in the record for the state trial court's conclusion that the [challenged] jurors [ ] would be impartial." *Patton*, 467 U.S. at 1038.

Mr. Quintano has failed to present clear and convincing evidence to rebut the presumption of correctness afforded the state court's finding. Mr. Quintano offers no evidence to rebut Ms. Webb's assertions of her ability to be fair and impartial. Mr. Quintano offers nothing beyond his own opinions and conclusory assertions of the juror's "bias and prejudice and extreme hatred." (*See* Petition (doc. # 3) at pp. 15-16 of 21; Traverse (doc. # 27) at p. 23 of 41 (relying on subsequent newspaper article about another case). Mr. Quintano's opinions and assertions are patently insufficient to overcome the presumption of correctness afforded the trial court's determination.

In view of the wide latitude the trial court must be granted in its assessment of credibility and demeanor, this court cannot conclude that the trial court erred in denying Mr. Quintano's challenge to juror Webb for cause. The state courts' determinations

were not contrary to established federal law or unreasonable determinations of the facts in light of the evidence.  Mr. Quintano is not entitled to habeas relief on Claim Three.


VII.    Conclusion

IT IS RECOMMENDED that the "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2254" (filed December 1, 2006) (doc. # 3) be DENIED and this civil action be dismissed with prejudice.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to

appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 20th day of February, 2008.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge